Good morning, Your Honor. Samuel Kornhauser, the infamous Samuel Kornhauser. I'd like to reserve five or six minutes for rebuttal. Your Honor, I think, is this court held in the Boylan case? The real issue here is whether I, as a S&E, have an interest in the money that was seized by the United States. What's your assigned interest? What has been assigned to you? My assigned interest is any and all rights that LEPI has and any assets. One of the assets is... Is there an assignment in the record? Yes, there is, Your Honor. Where? It's submitted as part of the petition. I'm sorry, the answer, I think it's... It's the pledge agreement. Where is there an assignment from LEPI to you of the judgment? LEPI assigned... Mr. Block, the owner of LEPI, and it's my position that that's... I wasn't asking your question. I want to know where there is an assignment of the judgment in favor of LEPI to you, which is the way you started out. Yeah. There's no assignment of the judgment from LEPI to me. What there is, is a pledge by... And that's at page... Starting at page 121 of the excerpt of record. There's a promissory note and a pledge of all of Mr. Block's ownership interests, including any interests and any assets of LEPI. That was assigned to me as security for prosecuting this case and making the recovery. My understanding was you received a note. A note and a pledge. With a lien on the shares of Mr. Block's. Well, no. All assets, including the power of attorney to exercise any rights that Mr. Block had. My contention is that LEPI is not a valid corporation, that its entity can be pierced to avoid unjust enrichment, and that Mr. Block assigned... It's always been the case. He was 100% shareholder. He was dipping into the corporate assets. He was using those assets. And in order to have me represent him and LEPI to recover this property and obtain the judgment, he assigned, halfway through the case, he signed a promissory note, secured it by a pledge agreement, assigning all of his right, title, and interest in the property as security for recovering that $450,000. So respectfully, Your Honor, I submit that that pledge agreement assigned LEPI's rights to me, and that's why I've got standing. I stand in the shoes of... Well, you're used to the term pledge. It's rather loose there. That's what it's called. That's what it's called, Your Honor. And we cited that. I cited that in my opening brief to this court at page 13 of the opening brief. It talks about he signed any collateral in which the debtor acquires an interest after the date of the pledge agreement. My contention is that that's blocked. The interest, this judgment, the $300,000 judgment that LEPI obtained against Ms. Valentine, that was assigned. Once he received that judgment by virtue of this pledge agreement, that was assigned to me. Or at least I had an interest in it if he didn't pay me the money, which he didn't do. He also gave me the power of attorney to go and collect that money. So again, I think that's laid out in the excerpt of record at page 127, the pledge agreement. So respectfully, under Boylan, the issue is whether... I guess the first issue is standing. I think this court in Boylan established the standing issue, which is not a difficult requirement to establish, is that there's got to be a claim or controversy with regard to the issue. And I certainly got a claim. If I'm an S&E of that claim and Ms. Valentine was structuring these monies in order to avoid... There's no dispute that this whole thing came about because Ms. Valentine was trying to avoid the judgment. Right. But I mean, to get back to the... The note to which you refer does not give you an interest in Lepie's judgment. It gives you an interest in Block's, potentially Block's interest in the corporation. True? True. Did you then execute on those shares? Did I execute on those shares? Yes. No. So because you elected not to execute on those shares, the judgment's held in the name of Lepie. Well, Your Honor... Excuse me. Let me finish. I just wanted to correct my answer. I'm sorry. Go on. Go ahead. I've got a claim. I've got... There's a lawsuit pending against Ms. Valentine. Right, but you don't have it yet. You don't have the shares. I don't have the shares. And isn't that a prerequisite to standing if you're signing? If you're going to stand, you're not an owner, you're not an officer. You have no position with Lepie itself, except as a person who has a right to, potentially, a right to levy on shares of stock owned by Block, which hasn't occurred yet. Well, that's right, but it hadn't occurred in the Boylan case either. They hadn't... Well, respectfully, Your Honor, it says a claim, a claim or a controversy. It doesn't mean that I have to be established as the owner yet. That's the whole point, that I'm a beneficial owner of those shares. If I prove my claim... But you're not yet. Well, I've got at least a claim, and that gives me an interest in the controversy. I've got... It gives me standing. I'm not some stranger that's walking in off the street and says, hey, I'd like to have that $127,000. I've got a colorable interest in that because Mr. Block pledged those shares and that interest in the monies that were seized to me. The fact that there's a pending claim to recover that doesn't diminish my beneficial interest. The claimants in Boylan, they were, quote, unsecured creditors. They had given money to Sexton. He goes, puts it into some bank accounts. They didn't foreclose on those claims. What they did is they brought a lawsuit, and as part of that... In fact, they hadn't even brought a lawsuit. I mean, I'm sorry. What's your site on Boylan? I don't see it in your brief. Oh, I'm sorry. It's 392 Fed Third 1002. The technical name is Judge Reinhart. It's U.S. versus $4,224,000. Okay, I have it. We cite that at length. I think this case is really very similar. You don't claim you were directly defrauded by the... Actually, I do. Well, indirectly I was... You don't claim you were directly defrauded by her. No, I'm claiming that I was indirectly defrauded because I stepped into the shoes of Lepie, because Lepie owes me that money. You haven't yet stepped into the shoes of Lepie. Your Honor, this took place to avoid paying that money. I couldn't come in and get the... Just so you have the timing, we got the judgment on November 27, 2007. Mr. Block hadn't defaulted, or Lepie hadn't defaulted in paying me the money yet. Within weeks of that, Ms. Valentine was out structuring this transaction. There was hardly any time for me to establish my ownership to that money because she had already transferred it. She had already structured it and started doing the money orders. And by the time that we got... So, again, I say I'm in the same position as the people that had initially given the money in the Boylan case. I was in the process of trying to recover that money. When Block wouldn't give me the money after months of trying to get the money, then I went after him, filed a claim, have a claim pending. We found out, I submit, that we're innocent owners. Nobody knew that she was structuring until we went to try and... until we were notified by the postal inspector that the money had been seized. So, respectfully, Your Honor, I mean, I think I probably wasn't clear enough on the facts or the timing, but if you look at it, there's a pledge of the assets. That's an asset. That judgment is an asset of the corporation. I'm entitled to it because Block didn't pay me that, and Lepie didn't pay me the $700,000 in attorney's fees that I'm owed for recovering those assets. And I guess one of the points I want to make is, and I think that's what's significant about the Boylan case, there weren't any other creditors. It's not like... The Boylan case. The difference between your case and the Boylan case is that the Boylan case creditors are at least unsecured creditors. If you were in the Boylan case, you're a creditor of the unsecured creditors. That's one step removed from Boylan. Well, it's true. My name's different, too. But, I mean, I don't think that... Respectfully, Your Honor, I think that's a distinction without a difference. I still got a claim. There's still a controversy. I don't... I mean, I believe what standing is about is to prevent strangers from walking in off the street that have no interest in the dispute trying to make a claim. If there's an assignment, if I'm right... I mean, what happens? One of the things I guess you were asking in the earlier situation, what happens? If the U.S., if the government seizes the money, there are no other creditors, where does it go? Well, Valentine has forfeited her interest to the $127,000. Block has given up his claim because he doesn't want to spend the money to come and chase after it. And so what happens to the money? It goes to the government. It has absolutely no interest in it at all. And Block doesn't want to pay me. He's not going to spend the money. Every day the government's broke, so... Well, I'd love to contribute, but it's kind of an involuntary $127,000 contribution that I hadn't been planning on. And if... I don't mean to make light, Mr. Well, I understand. I'm not trying to be more contentious or obnoxious than I usually am. I understand your frustration. You provided legal assistance to Mr. Block at the corporation, and, you know, I understand. You want to be paid. There's no question about it. But this is a forfeiture proceeding. But that's my point. And you have to meet the test, you know, for a legitimate ownership claim to the funds that the government has seized. But, Your Honor, respectfully, why is my claim any different than Block's claim, Block or Lepie? They haven't established their claim. They're, quote, an unsecured creditor. And Boylan says it doesn't matter. The issue is whether the person asserting a claim has an interest, has some interest in an equitable claim in the property that's seized. And I submit, whether I've established my right to a pledge or not, I've at least got a claim. And I'll never have an opportunity to prove that because of the timing, because the government seized those assets before I had a chance to prove the claim. That's pending. And so if nothing else, we'd ask the district court to, and I think it is a constructive trust. And that's really what ought to be decided. That money ought to be held. It shouldn't be forfeited or seized by the government. It ought to be held. Let's find out who the claimants really are. Do I really have a claim or do I not? If I don't, toss me out. If I do, then the money's there. It doesn't go to the government because the government's not entitled to it because I'm an innocent owner. If that money's really been assigned to me, then it ought to come to me. And if it isn't, it doesn't. And it's either, you know, it goes to the government. I've made my charitable contribution. All right. Thank you. May it please the Court, Assistant United States Attorney Rachel Moriyama for Plaintiff Appley, United States of America. Your Honors have hit the nail on the head. We're just asking questions. We have no questions. Mr. Kornhauser really is a stranger who walked off the street in this case. A complete stranger. Well, Your Honor, he and the judgment that he's relying on, the LEPI's California judgment, really have nothing to do with this forfeiture case. The postal money orders that are at issue in this case are being forfeited as property involved in structuring. Under the structuring statutes, the motivation of why the defendant was structuring or irrelevant doesn't matter. If it's clean money, dirty money, it's simply subject to forfeiture. And the district court found that the government had made its case. Both LEPI and Mr. Kornhauser at the trial level did not contest that. Now, he comes forward arguing that he should be able to stand in the shoes of LEPI, even though, as the court has pointed out. Let me say, if LEPI were the, LEPI was a claimant, correct? That's correct. And as a claimant, what was LEPI required to show? That's correct. Your Honor, LEPI had to show that it had an interest in the specific 133 postal money orders that were forfeited. Here, the district court found that LEPI, too, was an unsecured general creditor who couldn't trace an interest to the specific property to be forfeited. Instead, LEPI is just a general creditor of Valentine against her whole estate, all of her property. The facts of this case show that when LEPI obtained its judgment back in 2007, it sat on its hands for more than two years before attempting to enforce that judgment, to perfect a judgment lien in any property owned by Valentine. Is that why LEPI does not have a right to sue for this money? Because it delayed? I mean, suppose LEPI had acted more swiftly. If LEPI had acted more swiftly, Valentine would not have been able to have sold her Maui property. Instead, because they didn't perfect the lien, Valentine was able to sell that property for over a million dollars. The record also shows that she had over $700 in salary and had also received rental income prior to the sale of that property. So she had a lot of income with which to buy these money orders. And, in fact, the record is undisputed that at least 30 of the 133 money orders in this case were purchased before the sale of that Maui property. So even at best, LEPI is trying to argue that it has an equitable interest in the Maui real property. But even if you assume that it did, it still can't trace the proceeds from the sale of that Maui property to these postal money orders. And that's why Judge Seabright correctly held that under Boylan and under Hawaii constructive trust law, a constructive trust was not appropriate in this case. He first, on the facts, distinguished Boylan. Boylan was a Ponzi scheme case where the claimants in that case actually were defrauded by the defendant Sexton. They paid out their own money to Sexton. And eventually Sexton pled guilty to the fraud charges. And he admitted that the seized property that was at issue in Boylan were actual proceeds of his fraud. And because of that, the court in Boylan relaxed the tracing requirements under California trust law and held that the claimants who could prove that they were victims of Sexton's fraud were entitled to a constructive trust. Here, that's not the case. Both LEPI and Kornhauser are not victims of any fraud perpetrated by Valentine. The money that was used to purchase the postal money orders was Valentine's money. The court found, as a matter of fact, that neither LEPI or Kornhauser ever gave money to Valentine to purchase the property. They never possessed the defendant property since the postal money orders. They never touched them. And because the court found that she had other assets and they were not able to trace any interest into the specific 133 money orders, Judge Seabright held that a constructive trust wasn't warranted. And in addition to that, he also found that under Hawaii law, because of the latches issue, because of unclean hands, a constructive trust wouldn't be appropriate. Hawaii law allows the court the discretion to balance the equities and make those kinds of decisions. But I guess your point is that even if there had been a constructive trust, Mr. Kornhauser wouldn't have an interest in it. That's true, Your Honor, and I think Judge Seabright was concerned with that. At the hearing, he said, you know, how far do we extend this out? Because you are only, as you say, an unsecured creditor of the unsecured creditor. But in fairness, he's got, under his agreement, he might be able to execute on the stock, in which case he becomes the sole shareholder of LEPI. Now, as I understand what happened, what you said below is that LEPI might have a remedy through remission process. Is that true? I'm sorry? That LEPI had a remission remedy post-forfeiture? Yes. And so would you explain that to me? That's the second basis under Hawaii law why Judge Seabright said that a constructive trust wouldn't be appropriate because there were alternate remedies that LEPI had. Here, not only could LEPI have availed itself of the remission process under the forfeiture statutes, in addition, it also has a malpractice claim against Mr. Kornhauser. And a lot of the briefing that was done below – Well, if he gets the stock, I doubt that he'll pursue it. Well, a lot of the briefing below were fights between Kornhauser and LEPI, which really were irrelevant to the forfeiture case. Right, but we're talking about standing here, so I'm just trying to thread the needle because Mr. Kornhauser has a point that he's got a lien, he says, on the stock of LEPI. And I'm trying to figure out whether you think that if he actually acquires the stock, he has a right to remission at this point or not. Well, remission is at the discretion of the department and is not necessarily based on legal grounds. It's really equity. So this alternate remedy that Judge Seabright relied on, you think, is pretty illusory? No, I think that if there are – I mean, by the look on your face, you look like you're not going to give up the money on remission. I don't think that this is a case where the department would grant remission because, again, he's just too attenuated. Well, I mean, maybe now, but if he gets the stock, then he's LEPI. Well, no, Your Honor, because Judge Seabright also said at the time that LEPI got the judgment, Mr. Kornhauser had come back in as LEPI's attorney. And it's because of his failures to take action, to execute on the judgment, to record the judgment in Hawaii and obtain judgment liens, that LEPI is now an unsecured creditor. And, in fact, that's the position LEPI took, and that's the basis of its malpractice action that's pending in California. Right, but I'm not sure what that has to do with strict ownership. In other words, I mean, if LEPI has the right, it doesn't make any difference who's behind LEPI in terms of a valid interest for standing purposes. Well, Your Honor, I think that somehow the court has, well, in Congress, attempted to draw those boundaries, because Judge Seabright at the hearing said, well, what if, you know, one of your law partners had a claim against you, Mr. Kornhauser? No, I understand that. I'm just saying, if he's successful in acquiring the stock, then he'd be, for all intents and purposes, acquired LEPI's rights.  Well, yes, we do, Your Honor, because, again, under the innocent owner statute, I think that the government would win. At this point in time, Mr. Kornhauser's claim against LEPI is inchoate. He has not obtained a judgment. He has not executed on a judgment. The United States' interest vested in the postal money orders upon the commission of the structuring that began in 2008. So there's no way that he could come forward and claim a superior interest to the United States. But that's a far different question than standing, to assert it. Would you agree? Yes. But it wins on the merits. It's a whole different thing. Well, and I think that this Court can and should affirm the judgment below on either ground, whether you call this a lack of statutory or prudential standing or a case where the claimant cannot prevail on the merits, because he doesn't meet the definition of an owner under the innocent owner statute. That statute expressly states that an owner has to have an interest in the specific property being forfeited, and it expressly excludes a general creditor, which is what Mr. Kornhauser is, you know, under the best scenario. And I guess that's what LEPI is as well. Correct. Correct. The Court found that LEPI was just a general creditor who could not prove or trace an interest to those specific postal money orders, and that's all based on undisputed facts. Valentine had more than the Maui property to obtain proceeds to purchase these postal money orders, and that is the distinguishing fact that makes Boylan not applicable. You don't have tracing, and you don't have that fraud victim scenario that would allow the Court to excuse or relax the tracing requirement that otherwise is required under Hawaii constructive trust law. So if the Court has no other questions, thank you very much. Thank you, Kevin. Thank you, Arne. Briefly, that's exactly what Boylan does apply. Boylan said you don't have to, even if you're, quote, a general unsecured creditor, if you've got an interest in the property but you don't have any other creditors and nobody else is fighting over that money, you've got an interest in the property, the money. The money is fungible. All these money orders, they were just money. There's no way you can ever trace that money. What we got was a judgment against Valentine. Valentine was trying to avoid that judgment. She took those assets, that money, structured it so we couldn't get it. And it took the form. And you got the judgment in California. Why didn't you just record it in the county of Maui or wherever it is? Do you really want to know? Just take it rhetorically. Well, Your Honor, I am, but respectfully, Your Honor, it doesn't matter. You can't record a judgment against money. You can't record a judgment against property. We can, but there's nothing to say. There's a factual issue as to what money that is, whether it's the proceeds from the sale of. . . It was generally my experience as a California judge that whenever a party obtained a judgment in court, the first thing they would do was walk down to the county recorder's office and record the judgment because then it became a lien against all property that the debtor, the judgment debtor. . . All real property. All real property that the judgment debtor owned in the county of Los Angeles. Respectfully, Your Honor, what we did, we got a judgment in California, in Sonoma County, that was recorded two days after the judgment was entered. The issue about going to Hawaii, our position was, we weren't retained to enforce the judgment in Hawaii, but that's really not. . . The Maui property is irrelevant. The issue is whether she was trying to structure these postal money orders in order to avoid paying a submitted me. The Maui. . . I don't know how to make this any clearer. It's just a red herring. The issue, and I think, if you take a look at the 1005 in the Boylan case, it really deals with all these issues. The creditors were defrauded. I submit that Lepi and I were defrauded. All this was was a transfer and fraud of creditors. She admits it. Peter Smith, who was doing it for her, admits it. The government admits it, that they seized that property because she was getting money orders in order to avoid paying this very judgment that has been assigned, I submit, or at least I have an equitable interest. And this is a summary judgment here. Just not to complicate things further, but Lepi didn't appeal, so the judgment is finalized to Lepi. Right. The district court judgment? Yes. That's right. So if you stand in Lepi's shoes, you've got to overcome the judgment that's finalized to Lepi, right? Well, Your Honor, if there's an assignment that there was nothing for my contention is, then assign that or I guess it will relate back to back in 2005 when it was assigned. So whether they appealed or not is irrelevant. Well, except that maybe. To use the government's argument, Lepi wouldn't have had any standing to appeal it anyway because it assigned it to me, so why should they fight about it? It's my. It's not yours. They don't have a. Well, it's not yours yet. Well, I understand that, but I submit. The practical question is, so let's say you're successful and you get the lien on the stock, you execute, you become Lepi, and now you're faced with a judgment that Lepi didn't appeal. It's finalized to Lepi. How do you get around that? Well, because that judgment was assigned to me. They don't have to assign it. I did. A new judgment, Judge Seabright's judgment. No, I understand that, but if I'm standing. You go back and say I want to enforce it, and they say, well, Lepi, you're out. You've already had a judgment against you, and you didn't appeal it. Well, but if Lepi didn't. I'm trying to explain it. Bear with me. I'm a little slow. If Lepi didn't appeal it because they assigned it to me, what difference does it make? If it turns out that I'm the owner. I don't believe that Lepi has to appeal the judgment in order for me to have the right to appeal or to have standing in the lower court. All it means is that Lepi has given up whatever interest or right they've got to contest my ownership to that forfeiture. It's not my rights in terms of the forfeiture and standing to make that claim aren't derivative of whether or not Lepi appeals. I've appealed. No, I understand your position here. I'm just playing this out. If you eventually acquire it, it seems to me that's race judicata. I'm trying to follow you, and I'm saying I don't think there's a race judicata argument because if it turns out that the judge was wrong, the Judge Seabright was wrong, and that I've got standing and I have an interest in the property, I'm an innocent owner, it doesn't matter whether Lepi appealed that or not. I appealed it, and if I'm right and I've got that interest, what difference does it make if Lepi... If you've got an interest in what Lepi owns, it makes a difference. No, originally. I've got an interest in the judgment. There's no question about that. I don't need to have an interest in Lepi's appeal rights, though. If I've got an interest, then my appeal is valid because Lepi's interest was assigned to me back in 2005. Now this money comes in. If they choose not to assert a claim, that doesn't preclude me from asserting the claim that was assigned to me. I've got standing, and I believe that's what Boylan talks about. It's important to understand that the government says that there was no fraud here. I was defrauded. It was a transfer and fraud of creditors. That's what Peter Smith and Valentine were trying to do. They were going to the post office every day and trying to avoid us coming back and recovering from her, and that doesn't have anything to do with Maui property. It's got to do with money, whether that money came from the Maui property, whether it came from tomato cans buried in her backyard. Wherever that money came from, that was an asset of ours once we got that judgment. According to you, you're way over time, and we want you to go catch a plane. That polite way of getting rid of me. Thank you, Your Honor. Thank you. We're honoring your request to have an early argument. All right. The case just argued is under submission.
judges: Reinhardt, Thomas, Paez